UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-10045-Civ-MARTINEZ
MAGISTRATE P. A. WHITE

KEVIN ROBERT SHIRLEY, :

Plaintiff, :

v. :

SANDRA STERNAL, et al., :

Defendants. :

REPORT OF
MAGISTRATE JUDGE

I. Introduction

Kevin Shirley has filed a *pro se* civil rights complaint pursuant to Title 42, Section 1983. He seeks declaratory judgment, injunctive relief and damages against three employees of Trinity Food Service ("Trinity"), a contractor which provides meals at the Monroe County Detention Center ("MCDC").

This cause is before the Court on the defendants' Motion to Dismiss or in the Alternative for Summary Judgment (DE# 39) of Shirley's third amended complaint (DE# 20).[1] The motion is supported by a memorandum of law (DE# 41), statement of undisputed facts (DE# 40), and affidavits of two defendants (DE# 41-42). Shirley filed a Response (DE# 46), the defendants filed a Reply (DE# 47) and Shirley filed a Response to the Reply (DE# 48).

A. Plaintiff's Complaint

Shirley alleges the Trinity defendants provided him inadequate

[1] The Court has afforded Shirley three opportunities to amend his complaint. See (DE# 1, 15, 18, 20). The instant complaint names only three defendants against whom Shirley apparently intends to proceed. When the Court provided Shirley the opportunity to amend, it instructed him to name all claims against all defendants and warned him the original complaint would not be incorporated into the amended complaint. (DE# 10, 17, 19).

meals while awaiting trial at MCDC and failed to properly address his poultry allergy that prevents him from eating eggs, chicken or turkey. (DE# 20). He complains the defendants: (A) unjustifiably placed him on a restrictive vegan diet despite no religious or medical reason to do so; (B) served poor quality food, engaged in poor sanitation practices, failed to provide salt, pepper or other condiments or serve coffee, milk, meat, juice or fresh produce, and served food at inappropriate temperatures; and (C) provided him a diet that was nutritionally inadequate and failed to comply with medical directives regarding his food allergy.

Shirley filed numerous administrative complaints addressing the foregoing issues.(DE# 20, Ex. B, C). Many of his “inmate request” grievance forms were directed to the kitchen. He repeatedly requested a copy of the menu and ingredient lists and complained he was being served apparent poultry or eggs, was losing weight, suffered swelling due to inadequate nutrition, was receiving inadequate portions and that medical orders regarding his diet were not being followed. (DE# 1 at 17) (2/21/09: muffins, cake and corn bread have eggs, please do not send); (DE# 20-1 at 33) (3/26/09: please send menu; not enough food is on the trays); (DE# 20-1 at 36) (4/20/09: chicken and mayonnaise being served); (DE# 20-1 at 42) (5/12/09: requesting copy of diet); (DE# 20-1 at 47) (6/16/09: food quantity); (DE# 20-1 at 48) (6/17/09: food quantity); (DE# 20-1 at 50) (food quantity); (DE# 20-2 at 27) (5/18/09: legs are swelling due to lack of nutrition, lost twenty pounds); (DE# 20-3 at 3) (6/24/09: lost thirty pounds, hungry); (DE# 20-3 at 9) (6/30/09: received four eggs for lunch); (DE# 20-3 at 11)(7/2/09: received turkey sausage and muffin for breakfast); (DE# 20-3 at 27) (9/3/09: not reaching 2800 calories per day); (DE# 20-3 at 30) (9/8/09: food quantity).

The Trinity defendants who Shirley alleges administered, approved and served him an inadequate diet are Sandra Sternal, Michelle Park[2] and Misol Alfonso.[3] He alleges the lack of proper nutrition caused him weight loss of forty pounds in six months, swelling, headache, light-headedness, swollen legs, constipation, upset stomach, nausea, and depression.

B. Defendants' Motion to Dismiss/ Summary Judgment

The Defendants argue there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. They contend Shirley's request for compensatory damages is barred by Title 42, Section 1997e(e), and fails to state a civil rights claim under Title 42, Section 1983, because it is improperly premised on *respondeat superior*, moot insofar as it seeks declaratory judgment and injunctive relief, and fails to state a constitutional violation, and moreover, the defendants are entitled to qualified immunity. Sternal and Park[4] have provided supporting affidavits which provide as follows.

**Sternal** is Trinity's regional dietician. (DE# 43 at ¶ 1-2). She is responsible for designing menus of nutritionally adequate meals pursuant to directives, specifications and guidelines of the contracting Correctional Institutions. (DE# 43 at ¶ 3). She has no involvement in prescribing inmate diets, preparing and serving inmate meals or establishing MCDC food service policy. (DE# 43 at ¶ 3).

---

[2] Incorrectly identified in the Amended Complaint as Michelle Parks.

[3] Incorrectly identified in the Amended Complaint as Miso Alvarez.

[4] Alfonso left Trinity's employment on September 22, 2009. Her duties and covered by Park's affidavit.

According to Sternal, the vegan diet is the only diet including no chicken, turkey or eggs.[5] (DE# 43 at ¶ 5). She designed the vegan diet based on directives and guidelines provided by MCDC operations personnel from which she lacked authority to deviate. (DE# 43 at ¶ 5). The vegan diet menu runs in 4-week cycles and is attached to Sternal's affidavit. (DE# 43, Ex. A). The diet is designed to provide 2,800 to 3,000 calories per day, which exceeds the 2,500 recommended daily allowance for sedentary males of average build. (DE# 43 at ¶ 6).

Sternal states "MCDC medical department prescribed the modified Vegan Diet for the prisoner plaintiff as an accommodation for his purported allergies to chicken, turkey and eggs."[6] (DE# 43 at ¶ 5). Further, she explains Trinity modified the regular vegan diet for Shirley according to several MCDC medical directives. It began providing Shirley with beef twice weekly starting on or about January 31, 2009, milk with meals on or about June 25, 2009, evening snack on or about October 1, 2009, and an additional tray on or about October 16, 2009. (DE# 43 at ¶ 8-9).

**Park** is Trinity's Food Services Manager and former Assistant Food Services Manager. She oversees food services but has no involvement or input with prescribing inmate diets, designing menus or establishing MCSO food service policy. (DE# 42 at ¶ 2). She makes sure Trinity provides food services in a cost effective manner that complies with Monroe County Sheriff's Office ("MCSO") and MCDC food service and security policies and all government

---

[5] This assertion conflicts with the vegan diet menu appended to Sternal's affidavit, which includes scrambled eggs in two meals of the four-week menu cycle. See (DE# 43 at 56, 60).

[6] The MCDC "notification of special needs" medical form appended to Park's affidavit does not specifically prescribe a vegan diet, but states "DIET ORDER allergy to chicken turkey eggs." (DE# 42, Ex. A).

safety and sanitation regulations. She addresses cost control, inventory, supervises preparation and distribution of meals but not personally involved with the actual preparation and distribution of inmate meals. (DE# 42 at ¶ 2).

MCSO establishes specifications for all meals, specifies meal times, meal preparation times, portion sizes, substitute foods for medical or religious diets. (DE# 42 at ¶ 4). MCSO requires food to be placed on MCDC compartment trays, provide only plastic spoons. (DE# 42 at ¶ 5). Trinity not allowed to directly serve or distribute meals. Rather, this is done by inmates. (DE# 42 at ¶ 5).

Trinity employees are not authorized to prescribe special diets. According to Park, Trinity receives prescribed diets from MCDC's medical department "via a written medical diet order." (DE# 42 at ¶ 6). They must adhere to the prescribed diet and can deviate only as authorized by MCSO or MCDC officials. (DE# 42 at ¶ 6). Trinity determines what type of dietary modifications it has to make based on information Trinity receives from the MCDC medical department. (DE# 42 at ¶ 7). A Trinity staff member prepares labels showing inmate name, unit and type of diet for each inmate with a restricted diet. (DE# 42 at ¶ 7). Trinity staff deliver the labels to inmate trustees who affix the labels to meal trays. (DE# 42 at ¶ 7). Trustees prepare the special diet meals corresponding to the labels. (DE# 42 at ¶ 8). Meals are prepared with scoops to make sure portions are correct. (DE# 42 at ¶ 8). Trinity supervisors spot check the meals during preparation and detect discrepancies which are corrected before the meals leave the meal preparation area. (DE# 42 at ¶ 8). Trustees place the trays on transportation carts and distribute them. (DE# 42 at ¶ 8). Trinity employees do not participate in or have control over transportation of carts or distribution of trays. (DE# 42 at ¶ 8).

According to Park, Trinity received a MCDC's medical diet order on or about January 31, 2009, for a vegan diet and enacted it the same day. (DE# 42 at ¶ 9-10). The order is a MCDC medical form entitled "notification of special needs," dated January 31, 2009, stating "DIET ORDER allergy to chicken turkey eggs." (DE# 42, Ex. A). Park explains that, between January 31, 2009, and November 18, 2009, Trinity prepared meals in accordance with the vegan diet prescribed by MCDC medical department and modified by the medical department. (DE# 42 at ¶ 9). The modifications are contained in MCDC medical "notification of special needs" forms. The first, dated June 25, 2009, states "DIET ORDER - milk with meals - no eggs, turkey, chicken - may have beef, beans, pork & dairy."(DE# 42, Ex. B). A notification dated October 1, 2009, states "DIET ORDER ... snack." (DE# 42, Ex. C). Finally, a notification dated October 16, 2009, states "DIET ORDER double trays," that expires upon Shirley's release. (DE# 42, Ex. D). Park avers Trinity enacted each of the medical modifications to the vegan diet on or about the same date directed by MCDC. (DE# 42 at ¶ 11, 12).

All Shirley's meals were prepared in accordance with Trinity procedures. (DE# 42 at ¶ 13). Trinity revised its procedure to address Shirley's numerous grievances. (DE# 42 at ¶ 13). For instance, it required staff member to prepare Shirley's meals during several week period even though this was not part of their regular duties. (DE# 42 at ¶ 13). Staff individually inspected contents and temperature before placed on cart, required inmate kitchen worker to cover trays with another tray and wrap with saran wrap, and, for several weeks, placed wrapped meals in "hot box" before the trays loaded into cart. (DE# 42 at ¶ 14). It is not Trinity's policy, custom or practice to knowingly prepare meals that are nutritionally inadequate or which are contrary to any prescribed medical dietary restrictions. (DE# 42 at ¶ 17).

In regards to Shirley's allegation regarding excessive oil in the peanut butter, Park explained the vendor delivers it in solid blocks and must be mixed in a food processor with a small amount of vegetable oil before it is served. Park does not personally do this or participate in any food preparation. (DE# 42 at ¶ 15). Food is prepared by trustees. (DE# 42 at ¶ 15). Park strove to comply with and ensure, and ensure staff complied with and ensured food services conformed to police, practice and custom. (DE# 42 at ¶ 17).

**Alfonso** was Trinity's Food Services Production Supervisor and former Food Services Lead Production Supervisor until she left Trinity's employ on September 22, 2009. (DE# 42 at ¶ 3). She would oversee food services Trinity provided but had no involvement in prescribing inmate diets, designing menus or establishing food service policy. She ensured food services were provided in a cost effective manner complying with MCSO/MCDC food service and security policies and all government safety and sanitation regulations. She addressed cost control, inventory, supervised preparation and distribution of meals but was not personally involved with the actual preparation and distribution of inmate meals. (DE# 42 at ¶ 3). For a several week period in response to Shirley's grievances, Alfonso participated in preparing some of Shirley's meals even though this was not part of her regular duties. (DE# 42 at ¶ 13).

C. Plaintiff's Reply

Shirley argues the defendants' contention he was provided 2800 to 3000 calories per day is false, and that he was actually served between 1910 and 2590 calories per day. Further, he asserts he was served extra food for only five meals following approval of "double portions" on November 13, 2009. He argues the defendants' deliberate indifference constituted cruel and unusual punishment

and therefore they are not entitled to qualified immunity.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleading, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The inquiry is whether the evidence viewed in the light most favorable to the party opposing the motion "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). An issue of fact is "material" if it might affect the outcome of the case under the governing law. Anderson, 477 U.S. at 248. It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. Id. It is improper for the court to make credibility determinations on a motion for summary judgment. Miller v. Harget, 458 F.3d 1251, 1256 (11th Cir. 2006).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the party seeking summary judgment satisfies the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56. Summary judgment is granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial" because the complete failure of

proof of an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show that there are material issues of fact which require a trial. Fed. R. Civ. P. 56(e). If the nonmoving party presents evidence that is merely colorable or not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249. “A mere ‘scintilla’ of evidence supporting the opposing party’s position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.” Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). Moreover, “when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.” Griffin Indus. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007). Summary judgment is not a procedure for resolving a swearing contest. Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991). “Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge....” Anderson, 477 U.S. at 255. A heightened pleading standard does not apply to civil rights complaints. Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Despite the liberality with which courts are required to interpret pro se complaints, “a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.” Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).

## III. Declaratory Judgment and Injunction

Shirley’s complaint refers to the conditions of his pretrial

detention in MCDC. He was subsequently convicted and is serving his sentence in another facility. His claims for declaratory and injunctive relief are therefore moot. See Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007) (generally, transfer or release of a prisoner will moot that prisoner's claims for injunctive and declaratory relief); Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986); Tucker v. Phyfer, 819 F.2d 1030, 1035 (11th Cir. 1987) (claim for declaratory relief regarding conditions in which prisoner held as a juvenile became moot when he reached the age of majority); McKinnon v. Talladega County, 745 F.2d 1360, 1365 (11th Cir. 1984) (inmate transfer to different jail moots claim for declaratory and injunctive relief). Cf. Johnson v. Turpin, 2001 WL 520804 (11th Cir. 2001) (prisoner's claims for injunctive relief not moot because he was still within the State prison system). He does not allege there is a "real and immediate threat that he would again suffer similar injury in the future." Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 211 (1995) (quoting Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)). Accordingly, Shirley's claims for declaratory and injunctive relief should be dismissed as moot.

## IV. Civil Rights Standard

To state a claim under Section 1983, a plaintiff must allege "(1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under the color of state law." Richardson v. Johnson, 598 F. 3d 734, 737 (11th Cir. 2010); see 42 U.S.C. § 1983. The Eighth Amendment[7] requires that prison officials must provide inmates with

[7] The Eighth Amendment applies to convicted inmates, not pretrial detainees. A pretrial detainee's "constitutional rights arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 n. 4 (11th Cir. 1995). Whether or not the Court treats Shirley as a pretrial detainee or a convicted prisoner makes no difference, however, because "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." Marsh v. Butler County, 268

basic necessities including "adequate food, clothing, shelter and medical care...." Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). Prison food need only be "reasonably adequate" to pass constitutional muster. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977). Food that is adequate but unpleasant is sufficient. Hamm, 774 F.2d at 1567.

To state an Eighth Amendment violation, a prisoner must allege facts to satisfy an objective and subjective inquiry regarding a prison official's conduct and demonstrate the constitutional violation caused his injuries. Chandler v. Crosby, 379 F.3d 1278, 1289, 1291 n.21 (11th Cir. 2004); Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001). Under the "objective" inquiry, a prisoner must allege a condition that is sufficiently serious so as to amount to the denial of a basic human need or objectively serious medical need. Chandler, 379 F.3d at 1289; Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). The condition must be extreme and pose an unreasonable risk of serious damage to the prisoner's future health or safety. Restrictive or even harsh conditions alone do not rise to the level of an Eighth Amendment violation. Id. Under the "subjective" inquiry, the prisoner must allege the official acted with at least deliberate indifference. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003); see Taylor, 221 F.3d at 1258. Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow, 320 F.3d at 1245; see Taylor, 221 F.3d at 1258 (response by officials to

---

F.3d 1014, 1024 n. 5 (11th Cir. 2001). This analysis therefore refers only to the Eighth Amendment. See, e.g., Purcell v. Toombs County, 400 F.3d 1313, 1318, n. 13 (11th Cir. 2005).

medical needs must be poor enough to constitute an unnecessary and wanton infliction of pain, not merely accidental inadequacy or negligence).

(A) Vegan Diet

Shirley complains the defendants wrongfully placed him on a restrictive vegan diet, even though he is not a vegetarian, to address a purported food allergy. This claim should be dismissed because serving a non-vegetarian a vegan diet is not so serious as to have deprived him of a basic need. Inmates are not entitled to be served any particular foods so long as the diet they receive is nutritionally adequate. See Muniz v. Richardson, 2010 WL 1258135 (10th Cir. March 31, 2010) (allegation that prison food is of such poor quality and so lacking in nutrition that the prisoners do not enjoy the food does not rise to the serious deprivation of a basic human need that offends the Eighth Amendment); see, e.g., Sikora v. Leon County Jail, 2010 WL 2640235 (N.D. Fla. May 12, 2010) (placement on a restrictive vegan diet that the plaintiff complained was lacking in variety and nutritional value was frivolous and failed to state an Eighth Amendment violation). Aside from his allegation he received inadequate calories and portions which are discussed below, Shirley does not assert he has any health condition that makes a vegan diet inherently inappropriate for him. See, e.g., Fudge v. May, 84 Fed. Appx. 702 (8th Cir. 2003) (plaintiff did not dispute evidence that there was no medical reason he could not be placed on an alternative diet and presented no evidence he was being starved or otherwise injured as a result of the diet). Although clearly not to Shirley's liking, serving him a vegan diet to address his purported allergy is not so extreme to rise to a constitutional violation. As Shirley has failed to demonstrate a constitutional violation occurred, the Court need not engage in further analysis regarding this issue.

Accordingly, summary judgment should be granted insofar as Shirley complains the defendants improperly placed him on a restrictive vegan diet.

(B) General Food Quality

Shirley's general complaints that the food was unappetizing, omitted salt, pepper and other condiments, coffee, milk, meat or juice, was poor quality, occasionally spoiled, served at inappropriate temperatures on cracked and dirty trays are not sufficiently serious to amount to a constitutional deprivation. Inmates are not entitled to be served particular foods, items of certain quality or that is appetizing so long as they are nutritionally adequate. Hamm, 774 F.2d at 1567 (the fact that food occasionally contained foreign objects or was served cold did not amount to a constitutional violation); see Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990) (inmates do not have a right to be served a particular type of food). Further, Shirley's grievance forms indicate he felt ill and vomited due to spoiled food patties during a one-week period. "[O]ccasional service of spoiled food cannot be said to deprive inmates of basic nutritional needs." See Chavis v. Fairman, 51 F.3d 275, *3 (7th Cir. 1995); see also Perez v. Sullivan, 100 Fed. Appx. 564 (7th Cir. 2004) (allegation prison employees served spoiled milk possibly posed serious risk of harm but indicated mere negligence rather than deliberate indifference). Nor are inmates entitled to have food served at a particular temperature. Hamm, 774 F.2d at 1567. That food trays might have sometimes appeared to be dirty or unsanitary does not constitute cruel and unusual punishment. See, e.g., Blaxton v. Boca Grande Foods, 2008 WL 4 888852 (N.D. Fla. Nov. 12, 2008) (complaint that food is room temperature or cold, sometimes spoiled, and food trays and utensils are not always properly washed does not amount to cruel and unusual punishment).

Further, Shirley has failed to establish causation insofar as his complaints address conditions of food service that are conducted by inmate trustees and are outside the defendants' control. Sternal's affidavit states she has no involvement in preparing and serving inmate meals or establishing MCDC food service policy. (DE# 43 at ¶ 3). Park's affidavit states she oversees food services and ensures Trinity provides food service that complies with all government safety and sanitation regulations. (DE# 42 at ¶ 2). She supervises preparation and distribution of meals but is not personally involved in the actual preparation and distribution of inmate meals. (DE# 42 at ¶ 2). MCSO requires food to be placed on MCDC compartment trays. (DE# 42 at ¶ 5). Trinity employees are not allowed to directly serve or distribute meals, rather, this is done by inmate trustees. (DE# 42 at ¶ 5). Park's affidavit also explains that Alfonso oversaw food services Trinity provided but was not personally involved with the actual preparation and distribution of inmate meals except several weeks when she participated in preparing some of Shirley's meals in response to his continued grievances. (DE# 42 at ¶ 3, 13). Therefore, Shirley's complaints about food delivery issues such as temperature and cracked trays fail because he has failed to establish causation.

Accordingly, summary judgment should be granted insofar as Shirley claims he was served unpalatable food of poor quality.

(C) Inadequate Nutrition

Shirley claims the diet he received was too low in calories to maintain health and that the defendants failed to comply with medical orders regarding his food allergy. As a result, he contends he lost forty pounds in six months and suffered swelling of the legs and throat, lightheadedness, dizziness, inability to

concentrate, vomiting, and mood problems.

Shirley satisfies the objective inquiry by creating a dispute of material fact as to whether he received inadequate nutrition, denying him a basic human need. The defendants do not contest that Shirley reported he suffers a poultry allergy to MCDC officials, and that MCDC medical personnel prescribed a diet free of poultry and eggs and submitted several orders that Shirley receive additional food. Shirley claims that, despite these medical orders, he was repeatedly served foods that contained poultry products and that the orders for additional portions of food were not consistently honored.

Sternal, who designed the vegan menu, states in her affidavit that the vegan diet contains no eggs, turkey or chicken. However, the menu itself contradicts this claim because it includes scrambled eggs on two meals of the four-week cycle. See (DE# 43 at 56, 60). Sternal has not explained this apparent error. In addition, bakery items and other foods commonly containing eggs appear frequently on the vegan diet. See, e.g., (DE# 43 at 7, 10, 11, 44, 62). Shirley repeatedly filed grievances explaining he is allergic to eggs and that he was receiving goods that commonly contain eggs. The defendants informed Shirley on June 8, 2009, that the mayonnaise he raised in a grievance is actually egg-free salad dressing, and on July 2, 2009, that the cake mix, muffin mix, and bread do not contain egg. (DE# 20, attached grievance forms). In the meantime, Shirley was left with the option of either eating the food that he suspected of containing eggs and risking illness, attempting to obtain replacement meals, or going without. The defendants have never stated whether cornbread, coffee cake, and apparent egg noodles contain eggs. Nor have they addressed Shirley's allegations he was served poultry on several occasions

while he was supposed to be on a restricted diet. Specifically, he alleges he was served poultry products on April 20 (chicken), June 12 (chicken base), June 30 (four eggs), and July 2 (turkey sausage). Shirley also alleges the defendants failed to consistently honor MCDC medical directives that he receive additional portions. Sternal acknowledges MCDC medical ordered several modifications to Shirley's menu and asserts he was provided additional food pursuant to those orders. (DE# 43, at ¶ 8-9). However, none of the defendants have addressed Shirley's contention that those orders were not consistently honored. Based on the foregoing, there are material factual disputes whether Shirley received a menu that complied with MCDC medical directives regarding his reported food allergy.

Shirley also alleges he was served inadequate portions of food. He claims the vegan diet contains fewer than 2,500 calories per day and that peanut butter and other foods such as rice and vegetables were stretched with vegetable oil to prevent inmate weight loss. Sternal, a registered dietician, states she designed the vegan diet based on directives and guidelines provided by MCDC operations personnel, and which is designed to provide 2,800 to 3,000 calories per day, which exceeds the 2,500 recommended daily allowance for sedentary males of average build. (DE# 43 at ¶ 6). Sternal states in her affidavit that the nutrition and calories provided in the vegan menu were sufficient and that Shirley's portions were increased pursuant to MCDC orders. Park has denied peanut butter was stretched with oil and explains a small amount of oil is mixed to blocks of peanut butter before serving. Park failed to address the allegation oil is unnecessarily added to other foods. The defendants do not deny Shirley's contention that he lost forty pounds in six months and suffered other health consequences due to inadequate nutrition. Therefore, there are material disputed

facts whether the menu Shirley was served complied with medical directives and provided adequate nutrition, and whether he suffered physical effects as a result. See King v. Lewis, 2009 WL 5175297 (4th Cir. 2009) (allegation that prison served inadequate food portions causing hunger pain and lack of focus stated claim for cruel and unusual punishment); see, e.g., Walker v. Powell, 2007 WL 4303766 (N.D. Fla. Dec. 10, 2007) (whether ingredients were "stretched" and "watered down," causing plaintiff to lose forty pounds over a two-year period and suffer headaches, stomach pains, lack of concentration, pain and weakness, were a factual questions for the jury); Shepard v. Alvarez, 2009 WL 1872016 (S.D. Fla. May 21, 2009) (genuine issues of material fact regarding whether and to what extent food served varied from the prescribed menu, nature of food service director's control over and involvement in the content of food served, regarding whether the food that was served was adequate in calories and nutrition, and whether the food served cause the inmate to lose forty to fifty pounds over a sixteen-month period).

As to the subjective inquiry, Shirley has failed to show **Sternal** consciously or callously indifferent to a serious medical need[8] but has stated a sufficient claim against **Park** and **Alfonso**. Shirley admits Trinity placed him on a vegan diet to address his reported poultry allergy. Although the vegan diet apparently contains errors, including eggs on two meals of the four-week cycle, Shirley has failed to demonstrate this error amounts to anything more than negligence. He has failed to allege Sternal, who designed the diet, was personally aware of and acted with callous disregard of his allergy, or was aware he was receiving inadequate nutrition. See Gilley v. Ryan, 2009 WL 2929418 (S.D. Fla. Sept. 9,

[8] That Shirley's reported allergy is a serious medical condition will be assumed for purposes of this discussion.

2009) (allegations insufficient to state a claim of deliberate indifference against food service director who oversaw menu requirements but who was not personally involved in the alleged constitutional violations). In her affidavit, Sternal states the diet complies with MCDC food service policy, specifications and guidelines, and is nutritionally adequate as designed. (DE# 43 at ¶ 3, 5-6). By contrast, **Park** and **Alfonso** supervised preparation and distribution of meals, and Alfonso personally participated in preparing some meals in response to Shirley's grievances for several weeks. Shirley claims that, despite his numerous grievances and medical directives, he continued to receive poultry products and insufficient portions. He notified the kitchen that insufficient meals were causing him to lose weight and that he was receiving poultry products despite medical orders to the contrary. See (DE# 20-2 at 28). Given Park and Alfonso's admitted supervisory roles over food preparation, Shirley has sufficiently alleged the repeated departure from his medically prescribed diet constituted deliberate indifference.

Finally, Shirley has adequately alleged causation. As previously stated, **Sternal** is the regional dietician for Trinity. It appears she was responsible for creating a menu that included eggs for two meals of a four-week vegan menu cycle and may have provided insufficient calories. However, she did not prescribe the diet for Shirley, make any modifications to the diet, or supervise food preparation or delivery. Thus, Shirley would have adequately stated causation to the extent the menu contained errors and provided inadequate nutrition had he demonstrated deliberate indifference rather than mere negligence. Further, Shirley has failed to show a causal connection between Sternal and the alleged deprivations to the extent Shirley complains that the designed menu was not followed and that he did not receive the intended calories

per day. **Park** and **Alfonso** admit in their affidavits that they supervise preparation and distribution of meals. Therefore Shirley has demonstrated causation insofar as they failed to ensure poultry products were excluded from Shirley's trays and that the other medical directives were honored. However, there is no causation to the extent food might have been taken from his tray during the delivery process by inmate trustees over which the defendants have no direct control.

V. Damages

Shirley seeks a judgment of $10,000 from each defendant and punitive damages of $100,000 for emotional distress, mental anguish, loss of rights, and deprivation. The Plaintiffs argue damages are barred by Section 1997 because any injury was *de minimus*. However, the Court cannot conclude Shirley's alleged injuries are *de minimis* under the present record.

The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Shirley alleges he lost forty pounds over six months and suffered symptoms including headache, light-headedness, swollen legs, constipation, upset stomach, nausea, and depression, due to a diet that was too low in calories and failed to address his food allergy. This type of allegation can constitute more than a *de minimis* injury. Davis v. Missouri, 2010 WL 3156004 (8th Cir. 2010) (allegation plaintiff lost nineteen pounds during eight-month stay in jail because he was denied adequate food, was always sick and lacked energy to get out of bed, sufficiently stated a claim of

denial of adequate food and nutrition); Pratt v. Corrections Corp. Of America, 124 Fed. Appx. 465 (8th Cir. 2005) (allegation vegetarian diet for religious purposes was inadequate and caused him to lose thirty pounds was sufficient to satisfy the physical injury requirement); Jackson v. Gordon, 145 Fed. Appx. 774 (3d Cir. 2005) (plaintiff stated Eighth Amendment claim where he alleged he is severely lactose intolerant and allergic to eggs, was given inadequate meals and that he had to get food from other inmates through a transportation device that is disgusting and unsanitary, that the denial of a therapeutic diet is taking a serious toll on his health, and he suffers constant hunger from the lack of proper nutrition); Shepard, 2009 WL 1872016 (court could not say loss of forty pounds over sixteen months *de minimis*); Walker v. Powell, 2007 WL 4303766 (N.D. Fla. Dec. 10, 2007) (allegations sufficient to go to jury where plaintiff alleged he lost forty pounds in approximately two years, was constantly hungry, had headaches, stomach pains, lack of concentration, and weakness in his extremities and was being starved to death due to insufficient prison meals); Altman v. Loggins, 2008 WL 3539513 (W.D. Ark. Aug. 11, 2008) (loss of thirty pounds in three months is "significant" weight loss that creates genuine issue of fact as to whether plaintiff was provided an adequate diet; alleged he was not given fresh fruit, fresh vegetables, or milk, many meals were unfit for human consumption, and once they began receiving Hurricane Katrina relief meals those meals were expired and could not be eaten and contained no fruit or vegetables). The Court cannot conclude Shirley's alleged injury is *de minimis* as a matter of law and therefore Shirley's claim should not be barred by Section 1997 at this time.

## VI. Respondeat Superior

The defendants contend the defendants' liability is improperly

premised on *respondeat superior*, which is an invalid basis for Section 1983 liability.

Public officials in supervisory positions cannot simply be held vicariously liable for the acts of their subordinates. Robertson v. Sichel, 127 U.S. 507 (1888); Byrd v. Clark, 783 F.2d 1002, 1008 (11th Cir. 1986), abrogation on other grounds recognized by Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000). Nor can liability be predicated solely upon the doctrine of *respondeat superior* in a Section 1983 action. Monell v. Dep't Social Servs., 436 U.S. 658 (1978); Vineyard v. Murray, 990 F.2d 1207 (11th Cir. 1993). A causal connection between the acts of a supervising official and the alleged constitutional deprivation can render the official liable on a Section 1983 claim. See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008).

Shirley has alleged each of the Trinity defendants' personal actions deprived him of his constitutional rights. In the light most favorable to Shirley, he alleges Sternal formulated a vegan menu that is deficient in calories and nutrition, and that Park and Alfonso improperly applied the vegan menu to him, failed to enact MCDC's medical directives and ensure the medical directives and menu were complied with, and failed to adequately supervise the inmate trustees' preparation and service of his meals. Unresolved factual issues regarding the foregoing matters prevent the Court from concluding at this time that *respondeat superior* bars the instant suit.

## VII. Qualified Immunity

Further, the Court cannot conclude at the present time that the defendants are entitled to qualified immunity.

The defense of qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which reasonable persons would have known.'" Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation. Anderson v. Creighton, 483 U.S. 635, 638 (1987). All are protected except "the plainly incompetent or one who knowingly violated the federal law." Williangham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001).

In the light most favorable to Shirley, the defendants deprived him of the clearly established constitutional right to an adequate diet. The defendants have failed to allege their actions were reasonably related to a penological objective. Saucier v. Katz, 533 U.S. 194, 201 (2001). Accordingly, the application of qualified immunity is inappropriate at this juncture. See Baltimore v. City of Albany, 183 Fed. Appx. 891 (11th Cir. 2006).

VII. Conclusion

It is therefore recommended that the defendants' motion for summary judgment (DE# 39) be granted in part and denied in part. Summary judgment should be: (1) granted insofar as the plaintiff alleges he was improperly placed on a vegan diet, (2) granted insofar as the plaintiff alleges that the food he was served was of generally poor quality, and (3) granted as to Sternal but denied as to Park and Alfonso insofar as the plaintiff seeks damages due to inadequate nutrition and failure to honor medical directives relating to his diet. Further, the plaintiff's claims for declaratory judgment and injunctive relief should be dismissed as

moot.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 27th day of August, 2010.

UNITED STATES MAGISTRATE JUDGE

cc: Kevin Robert Shirley, pro se
DC# K02884
Charlotte Correctional Institution
33123 Oilwell Road
Punta Gorda, FL 33955

Edward J. Page
Carlton Fields
4221 W. Boy Scout Blvd.
10th Floor – Corporate Center III
Tampa, FL 33067-5736